# PECHMAN LAW GROUP PLLC
A T T O R N E Y S   A T   L A W

**488 MADISON AVENUE**
**NEW YORK, NEW YORK 10022**
**(212) 583-9500**
**WWW.PECHMANLAW.COM**

May 24, 2017

**VIA ECF AND MAIL**
Honorable Cheryl L. Pollak
United States District Court
Eastern District of New York
225 Cadman Plaza, Room 1230
Brooklyn, NY 11201

   Re: *Fercano v. Richmond IHOP LLC et al.*, 15 Civ. 7024 (CLP)
     (Joint Letter-Motion for Approval of Parties' Settlement)

Dear Judge Pollak:

  We represent plaintiff Gabriela Fercano ("plaintiff" or "Fercano") in the above-referenced wage and hour action against defendants Richmond IHOP LLC ("Richmond IHOP") and Jhong U. Kim (collectively, "Defendants"). We submit this letter-motion jointly with defense counsel, Joseph W. Carbonaro, to seek approval of the enclosed settlement agreement (the "Agreement") and dismissal with prejudice of this matter.

## PROCEDURAL AND FACTUAL HISTORY

  Fercano filed a Complaint on December 9, 2015 (ECF No. 1). In it, she claims to have worked at Defendants' IHOP franchisee store as a dishwasher, garnish prepper, hostess, and server from February 2005 to 2006 and as a "manager" from approximately 2006 to 2015. Although she was called a "manager," the Complaint alleges that Fercano did not, and could not, hire, fire, discipline, or promote employees at Richmond IHOP. According to the Complaint, Defendants paid Fercano on a per-shift basis, not on a salary basis, between 2009 and 2015 even though she regularly worked approximately fifty-four hours per workweek in that period. Finally, Fercano claims that Defendants did not provide her with annual wage notices whenever her rates of pay changed and with accurate wage statements at the end of each pay period. Upon these facts, Fercano sought to recover unpaid overtime wages, liquidated damages, statutory damages, interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law ("NYLL").

  In their Answer, filed on March 4, 2016 (ECF No. 8), Defendants generally denied all material allegations in the Complaint and asserted several affirmative defense, including: (a) any amount owed to Fercano should be offset "by the significant funds that Plaintiff stole from the corporate defendant and damages she caused to the corporate defendant's property during the course of her employment"; and (b) Fercano was exempt under the "executive" and "administrative" exemptions of the FLSA and NYLL, and

Hon. Cheryl L. Pollak
May 24, 2017
Page 2

therefore is not owed any wages. Throughout this action, Defendants have maintained that Fercano was a bona fide manager who essentially ran Richmond IHOP. Defendants claim that Fercano's work duties included, *inter alia*, recommending the hiring and firing of employees; interviewing job applicants; disciplining employees; setting and directing the duties of various employees; making employee work schedules; keeping track of inventory; and ordering merchandise on behalf of Richmond IHOP. Defendants have also claimed that Fercano was fired after she purportedly stole money from Richmond IHOP. Finally, Defendants argue that Fercano was always paid on a salary basis throughout her employment as a manager. Fercano strongly denies all theft-related allegations and that she was paid on a salary basis, but admits that she exercised several of the work duties that Defendants claim.

The Parties, through counsel, appeared for an initial conference before this Court on April 7, 2016 (ECF No. 11). On June 29, 2016, the parties appeared before the Court for a settlement conference, which was unsuccessful, and the Court set a discovery schedule. Following several discussions with and motions before the Court (ECF Nos. 18–22), Defendants retained Joseph W. Carbonaro as their new attorney (ECF No. 23) and the Court ordered that Defendants submit responses and objections to Plaintiffs' discovery requests by December 23, 2016 (ECF No. 26). The Parties complied with their discovery obligations, and Defendants produced payroll records for Fercano in December 2016.

The Parties appeared for a final settlement conference on January 20, 2017, but again did not reach a settlement. The Court ordered that all depositions take place by April 19, 2017, and scheduled a status conference for later in April 2017. Between January and April 2017, the Parties engaged in a series of settlement negotiations that resulted in the settlement in principle communicated to the Court on April 24, 2017 (ECF No. 28). The Parties consented to the jurisdiction of this Court for all purposes, pursuant to 28 U.S.C. § 636 (ECF No. 29), and the Court ordered the Parties to submit all papers ahead of the telephone fairness hearing scheduled for May 23, 2017, at 9:30 a.m. (ECF No. 28). Due to health issues, Defendant was unable to sign the Agreement until May 22. Accordingly, on May 22, 2017, the Court issued an electronic Order directing the parties to file their papers seeking approval of the proposed settlement by May 26, 2017, and rescheduling the telephonic fairness hearing to May 31, 2017.

Pursuant to the Court's instructions and *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), the Parties submit this Joint Letter-Motion, with the enclosed executed Agreement, requesting that the Court approve their settlement and dismiss the action with prejudice. However, as set forth in the Agreement, the Parties jointly request that the Court retain jurisdiction over the action until July 7, 2017, for purposes of enforcing the Agreement in the event of default.

## PLAINTIFF'S HIGHEST POSSIBLE DAMAGES

Using an average of fifty-hour hours worked per workweek, and relying on Plaintiff's allegations and admissions and Defendants' payroll records reflecting the amounts paid to Fercano per workweek, Plaintiff's counsel, Pechman Law Group PLLC

Hon. Cheryl L. Pollak
May 24, 2017
Page 3

("PLG"), calculated Fercano's highest possible damages under the FLSA to be $85,094.92. This amount equals the sum of:

- $38,797.46 for unpaid overtime wages between August 4, 2013, and May 2015;
- $38,797.46 as FLSA liquidated damages;
- $2,500 for Fercano's failure to give notice claim under the Wage Theft Prevention Act ("WTPA"); and
- $5,000 for Fercano's failure to provide accurate wage statements claim under the WTPA.

Fercano abandoned her claims for the period before August 4, 2013, because, as is explained in further detail below, Defendants' records show that she was paid on a salary basis during that period.

## THE SETTLEMENT IS FAIR AND REASONABLE

The Parties agree that the settlement is fair and reasonable and should be approved by the Court in light of the numerous litigation risks that Fercano will need to overcome should this case continue. The Agreement resolves bona fide disputes over sharply disputed issues, including whether Fercano was paid on a weekly salary basis. If she was, she would be exempt as an "executive" or "administrator" under the FLSA and NYLL and would not be entitled to recover any damages.

The FLSA's minimum and overtime wage requirements do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1) (2017). The New York State Hospitality Wage Order, which applies to this case, incorporates the standards of the FLSA and likewise excludes "an executive, administrative or professional" from entitlement to minimum and overtime wages. *See* 12 N.Y.C.R.R. §§ 146–1.4, 146–3.2(c)(1) (2015). To be exempt as an executive or administrator, both laws require employees to perform certain work duties and to be paid on a "salary basis." *See* 29 C.F.R. §§ 541.100(a)-(b) (executive), 541.200(a)-(b) (administrator) (2015); 12 N.Y.C.R.R. §§ 146–3.2(c)(1)(i)-(ii).

An employee is paid on a "salary basis" if he or she "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a). With some exceptions, such as full-day absences for personal reasons, an exempt employee "must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." *Id.* § 541.602(a)(1). "An employee is not paid on a salary basis if deductions from the employee's predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. If the employee is ready, willing and able to work, deductions may not be made for time when work is not available." *Id.* § 541.602(a)(2). Under the FLSA, between 2011 and December 2016, a worker must have been paid a weekly salary of at least $455 for the administrative or executive exemption to apply. *Id.* § 541.600(a) (2015) (effective until Dec. 2016). Under the NYLL, a worker is exempt under

Hon. Cheryl L. Pollak
May 24, 2017
Page 4

either exemption if he or she performs certain duties and is paid a weekly salary of at least: (1) $543.75 between January 1, 2011, and December 30, 2013; (2) $600.00 between December 31, 2013, and December 30, 2014; and (3) $656.25 between December 31, 2014, and December 30, 2015.  12 N.Y.C.R.R. §§ 146–3.2(c)(1)(i)(e), 146–3.2(c)(1)(ii)(d).

It was admitted in discovery that Fercano performed the duties of an executive and/or an administrator under the FLSA and NYLL.  Accordingly, the Parties' principal dispute is whether Fercano was paid on a "salary basis."  Fercano claims that she was paid on a per-shift basis, not a salary basis, of $115 from 2011 through 2012 and $130 from 2013 through 2015.  ECF No. 1 ¶¶ 24–25.  According to Fercano, there was no "predetermined amount constituting all or part of [her] compensation."  29 C.F.R. § 541.602(a). Moreover, Fercano alleges that Defendants regularly deducted sums from her pay based on the "quantity of the work performed," *id.*, because she received less pay when she worked fewer days per workweek.  Last, Fercano argues that on several occasions, if she left work early or arrived late, Defendants would make partial day deductions from her weekly pay.

Defendants deny Fercano's allegations and argue that her weekly salary amounts, listed below, always exceeded the amounts required under the FLSA and NYLL:

- $550 from 2011 through January 2012;
- $600 from January 2012 through June 2013;
- $650 from June 2013 to the end of 2013;
- $700 from January to November 2014;
- $750 from November 2014 to April 2015; and
- $775 from April 2015 to mid-May 2015.

In support of their position, Defendants produced payroll records reflecting that Fercano was always paid the amounts listed above per workweek from 2011 to August 2013.  Based on the payroll records, Defendants argue that any reasonable jury would conclude that Fercano was paid on a salary basis from at least 2011 through August 2013.

For the remainder of Fercano's employment at Richmond IHOP, from August 2013 through May 2015, Defendants' payroll records show that Fercano was paid at least the amounts listed above, but was often paid different amounts per workweek.  For example, the records reflect that Fercano was paid $780 for the week of August 18, 2013, with a "6" reflected under the "HR" column of the records; $650 for the workweeks from September 15 to December 29, 2013, with a "1" reflected under the "HR" column for each workweek; $819 for the workweek of June 1, 2014, with a "6.3" reflected under the "HR" column; and $780 for the workweek of June 29, 2014, with a "6" reflected under the "HR" column.  Fercano claims these documents prove that she was paid $130 per shift, and not on a salary basis, during this period.  For example, for the week of August 18, 2013, she received $780 for "6" shifts worked, equal to $130 per shift times 6.

In response, Defendants argue that all payroll records with a "1" under the "HR" column reflect Fercano's base salary, equal to the amounts listed above. Defendants claim

4

that from 2013 through 2015, in addition to her weekly base salary, they would pay Fercano additional amounts when she worked more than five shifts per workweek. In other words, whenever Fercano worked five or less shifts in a workweek, she received her predetermined base salary, which was reflected as a "1" under the "HR" column of the payroll records. When she worked more than five shifts, as reflected with a "6" or higher number under the "HR" column of the payroll records, she received $130 per shift worked, which was more than her base salary of $750. For example, for the week of December 28, 2014, the payroll records reflect "6.3" under the "HR" column and total pay of $819.00, equal to 6.3 x $130. For the following workweek, the records reflect "1" under the "HR" column and total pay of $750. Defendants argue that this method of compensation complies with the FLSA and does not remove Fercano's exempt status. *See* 29 C.F.R. § 541.604(a) ("An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.").

Fercano disputes that there existed this understanding between the parties and questions the reliability of Defendants' payroll records. Although she performed the work duties of an administrator or executive, Fercano claims that she never saw the payroll records before they were produced in this action. Moreover, throughout this action, Defendants have claimed that all or most of their employee's records were lost in a fire. Nonetheless, in December 2016, Defendants produced portions of Fercano's payroll records. Fercano argues that the records are also unreliable because there are multiple entries for the same workweeks with different data, suggesting that Defendants kept different sets of books. For example, for the workweek of November 30, 2014, one page of the payroll records reflects "6" under the "HR" column and pay of $780, yet another page for the same workweek reflects "1" under the "HR" column and pay of $750. Defendants deny this allegation and state that they had two pages, one with Fercano's minimum guaranteed base salary and one with her additional compensation.

Finally, the Parties also dispute the number of hours that Fercano worked per workweek. Fercano claims that she regularly worked six to eight shifts per workweek, for a total of approximately fifty-four hours per workweek from 2009 through May 2015. Defendants argue that Fercano rarely worked that many shifts, and therefore that many hours, as evidenced by their payroll records. According to Defendants, Fercano regularly worked forty, and sometimes even less, hours per workweek.

If this case continues, the Court will first have to determine whether Fercano was paid on a salary basis. If the Court concludes that she was, Fercano would not be entitled to recover any damages. If, on the other hand, the Court concludes that she was not, and therefore was not exempt under the FLSA and NYLL, the Court must then determine the number of hours that Fercano actually worked per workweek based on conflicting testimony from both sides. Should the Court credit Defendants' testimony even in part and conclude that Fercano actually worked, for example, forty-six hours per workweek on average (*i.e.*, the number between the fifty-four hours that she alleges and the forty hours that Defendants claim), her total unpaid overtime wages would be reduced to approximately $16,400, with total damages of approximately $40,000.

The Parties settled this matter in part to avoid costly litigation. Should this case continue, the Parties would have to take and defend depositions, including at least three non-party depositions. The Parties would also have to complete additional document discovery. Afterwards, either Party could move for summary judgment. If the Court denies summary judgment, which is a likely outcome considering the fact-intensive nature of the disputes at issue, the Parties would proceed to trial followed by potential appeals. Proceeding with the litigation, especially to trial, would consume significant amounts of time and resources, including the resources used to resolve this matter.

The Agreement requires Defendants to pay Plaintiff $40,000.00 (the "Settlement Payment") in one lump sum by June 7, 2017.[1] The Settlement Payment is reasonable because, after deducting attorneys' fees and costs, Fercano will receive $26,319.83. This is approximately 68% of the full amount of unpaid overtime wages that Fercano could recover if she were fully successful at trial. If the Court concluded that Fercano was a non-exempt employee but worked only forty-six hours per workweek, however, $26,319.83 would exceed the sum of her unpaid overtime wages (*i.e.*, $16,400) and WTPA damages ($7,500), and even compensate her for some of her FLSA liquidated damages.

Pursuant to the retainer agreement between Fercano and counsel, PLG's fees are $13,680.17, which equals 33.3% of the Settlement Payment after reimbursement of all costs incurred in the prosecution of this action.[2] *In re Lawrence*, 24 N.Y.3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."); *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG) (VMS), 2014 U.S. Dist. LEXIS 164069, at *9 (E.D.N.Y. Nov. 19, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."). It bears noting that PLG's lodestar to date exceeds $33,000.00.[3] As such, we believe that the contingency fee in this case is fair and reasonable, particularly because it is less than the lodestar and because Fercano accepts it.

We thank the Court for its time and consideration of this matter. Counsel, on behalf of the Parties, will be available by telephone on May 31, 2017, to address any questions or concerns that the Court may have.

Respectfully submitted,

Gianfranco J. Cuadra

cc: Joseph W. Carbonaro, Esq.
Encl.

---

[1] By e-mail dated May 19, 2017, the Parties, through their respective counsel, amended the dates in Sections 4(A) and 4(C) of the Agreement. The e-mail is enclosed as part of the Parties' Agreement.

[2] Costs incurred are $400.00 for the filing fee, $102.00 for service of process fees on Defendants, and $18.26 for mailing a demand letter to Defendants by FedEx. Copies of receipts for these expenses are available for the Court's review if necessary.

[3] PLG's contemporaneous billing records are available for the Court's *in camera* review if necessary.